IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>CHRISTOPHER LEE SHELLEY,<br><br>Appellant. | No. 81510-5-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

COBURN, J. — Appellant Christopher Shelley pleaded guilty to failing to register as a sex offender. The trial court sentenced him to 12 months in jail. While Shelley was serving his sentence, the court signed a temporary release order authorizing Shelley to leave King County Jail for a week in March 2020 to attend the birth of his child. Due to the COVID-19 pandemic, the court ordered multiple extensions of temporary release through June 2020. Shelley contends the court erred by not giving him credit toward his sentence for the time he was temporarily released from custody. We affirm.

FACTS

Shelley was arrested for failing to register as a sex offender. After extensive negotiations with the State, Shelley pleaded guilty to an unranked felony of failure to register as a sex offender with a joint recommendation of the maximum sentence of 12 months in jail. In exchange, the State dismissed

Citations and pin cites are based on the Westlaw online version of the cited material.

another failure to register charge in Snohomish County that carried a standard range sentence of 22-29 months in prison and 36 months of community custody. Additionally, the parties agreed to recommend a one week temporary release for Shelley to attend the birth of his child. The judge followed the agreed recommendation.

In February 2020, the trial court signed a temporary release order (TRO) authorizing Shelley to leave King County Jail from March 1 to March 9 to attend his child's birth. However, Shelley's partner did not give birth during the original release period. By agreement of both parties, the court extended the order to March 18. The TRO did not specify any conditions of release other than his return date.

> Mr. Shelley shall be temporarily released from jail on March 1, 2020, at 9:00 a.m. He shall return to jail at the Maleng Regional Justice Center not later than March 9, 2020 at 5:00 p.m. A hearing is set for March 9, 2020 at 1:15 p.m. . . . If Mr. Shelley's child has not yet been born, he shall appear in person with medical documentation signed by a medical provider, about the due date status. The court will at that time consider extending the temporary release. In the event Mr. Shelley's wife is in labor on March 9, 2020, he shall provide notice to defense counsel before the hearing, but need not appear in person at the hearing that day. The court will at that time consider how to address any extension of the temporary release. If the child has been born prior to the March 9, 2020 hearing date, Mr. Shelley shall either appear at the hearing, or return to jail by 5:00 p.m.

The baby was late and the order was extended to March 18 by agreement of the parties.

Because of the COVID-19 pandemic, Shelley again asked to extend his temporary release after the birth of his child in mid-March. After reconsideration,

2

the court granted the extension. The order did not include any conditions of release other than for Shelley to report to jail on April 27. In mid-April, Shelley asked the court to extend his TRO to May 4 based on the evolving nature of the COVID-19 pandemic. The court granted the order.

At the end of April, Shelley moved the court to extend his TRO through May 7 and then unconditionally release him because he would have completed his sentence on that date. The State opposed the motion and stated that Shelley had not been in custody during his temporary release and so he was not entitled to credit for that time toward his 12-month sentence. The State also moved for an order finding Shelley to be in breach of the plea agreement. The court continued Shelley's temporary release through May 8 to permit his counsel to respond to the State's motion for breach.

The court denied the State's motion for breach and extended Shelley's release to June 1 based on the COVID-19 crisis. The court denied Shelley's motion for unconditional release finding that his release could not be counted toward his sentence because he was neither fully nor partially confined.

The court later granted Shelley's request to extend his temporary release to June 15 in light of the changing nature of the current public health crisis. Shelley filed a notice of appeal of the denial of his motion for credit for time spent on temporary release. He also filed a motion for an appeal bond to remain out of custody until that was resolved.

After Shelley again moved to extend his release, the court extended the temporary release through June 26 to allow the parties to brief the appeal bond

issue. The court denied the appeal bond and ordered Shelley to report to jail on June 26. None of the orders extending the TRO placed conditions on Shelley other than providing medical documentation signed by a medical provider about the due date status of his child and instructing him when to report back to jail or court. Shelley completed his sentence on September 1, 2020.[1]

## DISCUSSION

Whether Shelley was temporarily released for the birth of his child or because of a pandemic, the question remains the same. Did Shelley's temporary release qualify as confinement for the purposes of credit toward his sentence? Under the facts of this case, we conclude it did not.

The court reviews questions of law de novo. State v. Swiger, 159 Wn.2d 224, 227, 149 P.3d 372 (2006).

The Sentencing Reform Act requires a sentencing court to credit a felony defendant's sentence for presentence time spent in "confinement." RCW 9.94A.505(6). "Confinement" includes "partial confinement," which includes work release, home detention, work crew, electronic monitoring, and a combination of work crew, electronic monitoring, and home detention. RCW 9.94A.030(8), (35). "Home detention" is a subset of electronic monitoring and means a program of partial confinement available to offenders wherein the offender is confined in a private residence twenty-four hours a day, unless an absence from the residence

---

[1]The State moved a commissioner of this court to dismiss the appeal as moot. The commissioner decided that even if the case is technically moot, trial courts may benefit from an authoritative determination as to the trial court's exercise of discretion under the circumstances of the current pandemic. The State did not move to modify the commissioner's ruling.

is approved, authorized, or otherwise permitted in the order by the court or other supervising agency that ordered home detention, and the offender is subject to electronic monitoring. RCW 9.94A.030(29).

Offenders also have the right to receive credit for time spent in confinement post-conviction. Swiger, 159 Wn. 2d at 227-28 (citing State v. Anderson, 132 Wn.2d 203, 213, 937 P.2d 581 (1997)). A court may release a defendant on certain conditions, including electronic home monitoring or its equivalent. Swiger, 159 Wn. 2d at 227 (citing RCW 9.95.064). "If the conditions of release amount to 'home detention' under RCW 9.94A.030, the defendant is entitled to receive credit against his sentence for the time spent on home detention pending appeal." Swiger, 159 Wn.2d at 227 (citing State v. Anderson, 132 Wn.2d 203, 212–13, 937 P.2d 581 (1997)).

Shelley first contends that he should have been given credit for time on his sentence when he was temporarily released from custody because of the COVID-19 pandemic. We disagree.

Shelley cites no authority supporting the claim that he should be awarded credit for time served on his sentence when he was temporarily released because of the COVID-19 crisis. Instead, Shelley points to emergency court orders suspending speedy trial rules and jury trials because of the pandemic. Those procedural emergency orders have no bearing on whether courts may award credit for time Shelley did not serve in full or partial confinement.

Shelley next contends that he should be given credit because he was confined when he was "furloughed" from the jail. We disagree.

Shelley relies on State v. Kent, where we held that the trial court erred in concluding the defendants' failure to return from work release or medical furlough did not constitute escape in the second degree. 62 Wn. App. 458, 459, 814 P.2d 1195 (1991). The court considered Washington's escape statute. "RCW 9A.76.120(1)(a) states: 'A person is guilty of escape in the second degree if: (a) He escapes from a detention facility . . .' RCW 9A.76.010(2)(e) defines 'Detention facility' as 'any place used for the confinement of a person . . . (e) in any work release, furlough, or other such facility or program . . .' " Id. Further, the court defined a "place" to mean " 'any area in which a person is permitted to go or remain according to the terms of his work release, furlough or comparable program.' " Kent, 62 Wn. App. at 460 (quoting State v. Peters, 35 Wn. App. 427, 431, 667 P.2d 136 (1983)). We held that because the person in Kent "departed from the limits of their custody without permission by not returning to the facility," he failed to be where he was supposed to be and could therefore be charged with escape. Id. at 461.

Shelley's reliance on Kent is inapposite. Credit for time on work release, furlough, or a comparable program was not at issue in Kent. See id. Ironically, the defendants in Kent argued that because one was serving time on work release and the other was on a medical furlough, they were not physically confined and could not be charged with escape. Id. at 460. We concluded that they could be charged with escape after they failed to return to jail on time from work release and medical furlough. Id. at 461.

6

Shelley contends that because he also could have been charged with escape while temporarily released, he was confined and should receive credit for the time on temporary release. Shelley ignores the fact he could have only been charged with escape on the dates he was told to return and failed to do so. See State v. Ammons, 136 Wn.2d 453, 963 P.2d 812 (1998) (holding that a person is considered "in custody" for purposes of the escape statute starting on the date that they were court ordered to perform an affirmative duty, such as returning from a temporary release); State v. Breshon, 115 Wn. App. 874, 878, 881, 63 P.3d 871 (2003) (holding that defendants ordered to treatment in lieu of jail can be charged with escape only from the point at which they fail to report to the program).

Regardless, the record does not support that Shelley was on work release, furlough[2] or a comparable program.

Lastly, Shelley summarily asserts that he deserves credit for time served toward his sentence because he was in partial custody when he was temporarily released from jail. We disagree.

Shelley cites to cases where the courts concluded that individuals had the right to credit for time served (both pre-sentence and post-sentence) when they were restricted to certain areas by home restraint and GPS monitoring. See

---

[2] A "furlough" is defined as an "authorized leave of absence for an eligible resident, without any requirement that the resident be accompanied by, or be in the custody of, any law enforcement or corrections official while on leave." RCW 72.66.010(3). Only the Department of Corrections may grant a furlough. See RCW 72.66.012; See also In re Post-Sentence Review of Cage, 181 Wn. App. 588, 594, 326 P.3d 805 (2014).

State v. Speaks, 119 Wn.2d 204, 206, 829 P.2d 1096 (1992) (concluding sentencing courts are required to give offenders credit for presentence confinement time served on electronically monitored home detention); State v. Swiger, 159 Wn.2d 224, 149 P.3d 372 (2006) (holding defendant was entitled to credit for time served for post-conviction GPS home monitoring); State v. Anderson, 132 Wn.2d 203, 205, 937 P.2d 581 (1997) (recognizing defendant was entitled under equal protection clause to three years of jail time credit for time spent on electronic home detention while appealing conviction).

Unlike the offenders in Speaks, Swiger, and Anderson, Shelley was not monitored by any device while on temporary release. The court did not place Shelley on home detention. Shelley fails to establish that he was in partial custody while temporarily released from custody.

CONCLUSION

Under the facts of this case, the court properly denied Shelley's request for credit for time served while Shelley was temporarily released from jail.

We affirm.

_____
Coburn, J.

WE CONCUR:

_____
Andrus, A.C.J.

_____
Mann, C.J.

8